**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEITH S. BROWN, | : | Civil No. 1:20-CV-00849 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. MARY JOY MONSALUD, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Brown's motion for a preliminary injunction, filed May 20, 2020, seeking Defendants compliance with a March 23, 2016 grievance decision issued by the Pennsylvania Department of Corrections ("DOC") Bureau of Health Care Services requiring that he "self-administer [his] eye drops under supervision of the medical staff in the medical department" due to his history of drug-related suicide attempts.  (Doc. 1–2 at 10, 34 and 41.)  Defendants filed expedited responses opposing the motion.  (Docs. 9, 14–15.)  Plaintiff has filed a reply in support of his motion.  (Doc. 16.)  The motion is now ripe for disposition.  Because Brown cannot demonstrate a likelihood of success on the merits or that he will suffer irreparable harm if the injunction is denied, the court will the motion for injunctive relief.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Brown is a self-represented individual incarcerated at the Frackville State Correctional Institution in Frackville, Pennsylvania.  He is almost 58 years old and has a significant history of mental illness, inpatient psychiatric hospitalizations,[1] and multiple incarcerations.  In 2008, the Pennsylvania Department of Corrections ("DOC") gave Brown a Mental Health Stability Rating of D indicating he suffers from a serious mental illness.  (Doc. 1–2 at 48.)  Brown has been diagnosed in the past "as having a History of Bipolar Disorder, Polysubstance Abuse, Antisocial Personality Disorder, and Borderline Personality Disorder."  (*Id.* at 49.)  Brown attempted suicide at Camp Hill in 2008.  (*Id.* at 18 and 51.)  The same year Brown's treating physicians directed Brown was not permitted to self-medicate, this order included his prescription eye drops.[2]  (*Id.* at 46.)  At that time all of Brown's psychotropic and "life-sustaining medications," were delivered to him "crushed due to [his] suicidal history."  (*Id.* at 45.)

In the fall of 2015, Brown filed a grievance because he did not want to keep his eye drops in his cell.  (*Id.* at 43.)  The response confirmed Brown was not to keep his eye drops "in [his] possession."  (*Id.*)  In October Brown filed a grievance

---

[1] Brown presents over 10 pages of documents addressing his mental health history and treatment in support of his motion for a temporary restraining order.  *See* Doc. 1–2.

[2] At some point prior to his April 2018 arrival at SCI-Frackville, Brown was diagnosed with glaucoma and prescribed eye drops.  (*Id.* at 25.)

that staff threatened him with a misconduct if he did not "take [his] medications and eye drops back to his cell." (*Id*. at 44.)  Following an investigation, it was determined that he was "administering [his] medication [him]self in the medical area and then [gave] the bottles back" to staff.  (*Id*.)

In March 2016, while housed at SCI-Smithfield, Brown filed a grievance regarding his concerns to "self-administer [his] glaucoma eye [drops] based on [his] history and risk of self-harm."  (*Id*. at 41.)  Staff at the DOC's Bureau of Health Care Services found that his treatment plan was appropriate as it called for him "to self-administer [his] eye drops under supervision of the medical staff in the medical department."  (*Id*.)

In June 2019, Karen Holly, Dr. Monsalud, and Dr. Newton (the named Defendants) [3] gave Brown the choice of taking his "medication" back to his cell or he "get[s] nothing."  (*Id*. at 25.)  When he objected, Defendants responded that they did not care "if he kills himself with his medication." (*Id.* at 3.)  Brown alleges that from June–July 2019, he "was not permitted the use of his [eye] drops" until his family and Governor Wolf intervened.  (*Id.* at 4, 27.)  Brown claims he lost the vision in his right eye due to Defendants changing the manner of the

---

[3]  Dr. Monsalud is an employee of the contracted provider of medical professional services to the DOC.  (Doc. 1 at ¶ 2.)  Karen Holly is employed by the DOC as a Corrections Health Care Administrator ("CHCA").  (Doc. 15-2.)  Dr. Newton is a Board-Certified Psychiatrist and provides contract psychiatric services to inmates, including Brown, within the DOC.  (Doc. 14-1.)

dispensation of his eye drops from Direct Observations Therapy ("DOT") in the medical unit to Keep on Person ("KOP") where he is given his medications to store in his cell and self-medicate as directed.  (*Id.* at 6, 27.)

In his motion for a preliminary injunction, Brown claims he is in imminent danger of losing sight in his left eye due to Defendants' non-compliance with the Bureau of Health Care Services' March 23, 2016 decision that he should receive his eye drops under the supervision of medical staff in the medical department. (*Id.* at 6, 10.)  According to Brown, in March 2020, Dr. Monsalud, Dr. Newton, and Karen Holly deviated from this practice and directed his eyedrops to be dispensed KOP.  (*Id*. at 4.)  He contends a "bag of medication and all [of Brown's] eye drops" were thrown into his cell.  (*Id*.)  Brown gave the bag of medication to staff on his housing unit who returned it to the medical department with the explanation that Brown was not supposed to keep medication in his cell.  (*Id*.) Medical staff ignored this information and the bag of medication was returned to Brown's cell.  (*Id*.)  Brown then "tr[ied] to swallow it but was stop[ped] by" unit staff.  (*Id*.)  Brown was then placed in a psychiatric observation cell ("POC").  (*Id*.) Brown claims he was denied his medication while in the POC because "he refuse[d]" to keep it in his cell.  (*Id*. at 36.)  Brown argues that the continued denial of his eye drops will result in the loss of vision in his left, and only remaining eye. (*Id*. at 5.)

4

Dr. Monsalud left the employment of SCI-Frackville's contract medical care provider on April 20, 2020.  She no longer prescribes for, or otherwise controls Brown's current medical care.  (Doc. 9 at 11.)  Dr. Newton, a board-certified psychiatrist, does not prescribe or treat Brown's physical complaints or ailments, including those concerning his eyes.  (Doc. 14–1 at ¶ 4.)  He does not determine whether non-psychiatric medication, prescribed by others, should be issued by DOT or KOP.  (*Id.* at ¶ 5.)  He adds that all psychotropic medications are distributed by DOT.  (*Id*. at ¶ 6.)  In July 2019, Dr. Newton "opined there was no psychiatric reason why Mr. Brown [could not] hold his eye drops in his cell and self administer his eye drops in his cell."  (*Id*. at ¶ 7.)  CHCA Holly is a DOC non-medical professional.  Her duties involve the administration functions of SCI-Frackville's medical department.  (Doc. 15-2 at ¶¶ 1–2.)  A physician or physician's assistant, not CHCA Holly, decides whether medication is dispensed on a KOP or DOT basis.  (*Id.* at 4–5.)

On May 18, 2020, Brown was placed in disciplinary housing where he receives all medications by DOT.  (*Id*. at ¶ 7.)  Upon his release from disciplinary housing his "medication status will revert to KOP."  (*Id*. at ¶ 8.)

### STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A

preliminary injunction maintains the *status quo* pending a final decision on the merits, whereas a "mandatory injunction" alters the status quo by granting injunctive relief before trial, and as such is appropriate only in extraordinary circumstances. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.") Mandatory injunctions should be used sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). A request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995).

To obtain a preliminary injunction or temporary restraining order, the requesting party must show: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of the preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)); *see also* Fed. R. Civ. P. 65. If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors

and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested relief." *Reilly*, 858 F.3d at 179. If a party cannot establish both a likelihood of success on the merits and a probability of irreparable harm, the issuance of a preliminary injunction is inappropriate. (*Id.*)

**DISCUSSION**

Judged against the above standards, Brown's motion for injunctive relief fails. The narrow issue before the court is whether Brown will be irreparably harmed if prison and medical staff at SCI-Frackville fail to follow the Bureau of Health Care Services' 2016 statement concerning the then DOT receipt of his glaucoma medications. The court has carefully reviewed the Final Appeal Decision in Grievance 592113 dated March 23, 2016, and does not find it a mandate binding Brown's medical care providers in perpetuity from ever directing that his non-psychotropic medications, specifically his eye drops, be given KOP and requiring him to self-medicate. *See* Doc. 1–2 at 10. The four-year-old grievance response is of limited utility in advancing Brown's request for injunctive relief as it addresses the appropriateness of Brown's care at SCI-Smithfield in 2016. Brown is currently housed at SCI-Frackville. He fails to offer any current medical records, medical opinion, or other evidence of an order requiring his current medical team to refrain from prescribing his non-psychotropic medications

7

by way of KOP.  Thus, he has not demonstrated a likelihood of success on the merits.

Brown also fails to establish the second "gateway factor" for injunctive relief, that he is "more likely than not" to suffer irreparable harm absent the requested relief.  *See Reilly*, 858 F.3d at 179.  The loss of vision in his right eye, allegedly due to his failure to receive his glaucoma medication, motivated Brown to file his motion for a preliminary injunction to ensure he receives his drops to preserve the remaining vision in his left eye.  There is no evidence in the record that SCI-Frackville staff have not made his glaucoma medication available to him at all times.  Presently Brown receives his drops by way of DOT in disciplinary custody.  Upon his release from disciplinary custody, his "medication status will revert to KOP."  Doc. 15-2 at ¶ 8.  Defendants' decision not to provide Brown's drops via DOT only affects the location where his drops are given, it does not terminate his prescription.  At this point, Brown has successfully demonstrated the ability to instill his eye drops for years and there is no reason he cannot continue to do so.  *See* Doc. 1–2 at 13 (Brown is "currently administering the medication [himself] in the medical area and then [he] give[s] the bottles back.")  Also, although not entirely indicative of Brown's present mental status, in July 2019, Dr. Newton opined that there was no psychiatric reason why Brown could not keep his eye drops in his cell and self-medicate.  (Doc. 14–1 at ¶ 7.)  While Brown may

have concerns regarding his ability to control his impulses to misuse medications entrusted to him, he fails to present any evidence that precludes his medical providers from challenging him to meet their expectations of his ability to do so. Furthermore, Brown is acutely aware of the potential loss of vision in his only seeing eye should he not consistently use his glaucoma drops. Thus, upon his release from disciplinary custody, the only likelihood of him suffering irreparable harm is if he refuses to accept the responsibility for his remaining vision by refusing to self-administer his non-psychotropic medication. Accordingly, his motion for a preliminary injunction will be denied.

## CONCLUSION

While Brown has demonstrated a commendable interest in his well-being and has presented a well-drafted motion for injunctive relief, he has failed to demonstrate his likely success on the merits of his claim, or that he will suffer irreparable harm if his request for injunctive relief is not granted. Brown has access to his medication and the current ability to use it. Under these circumstances, Brown's motion for injunctive relief will be denied.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 19, 2020