IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH S. BROWN, | : | Civil No. 1:20-CV-0849 |
| Plaintiff, | : | |
| v. | : | |
| DR. MARY JOY MONSALUD, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are Plaintiff's motions for appointment of counsel due to his mental health issues, the complexities of the issues involved, and his need for assistance in conducting discovery from the confines of the institution's Restricted Housing Unit ("RHU"). (Docs. 70, 86.) As Plaintiff is challenging, in part, that he lost vision in his right eye due to Defendants' alleged failure to provide him with his glaucoma and other non-psychotropic medications for a month, the court finds that the complexity of the issues involved and the likelihood of Brown needing a medical expert to advance his case, warrant the conditional grant of Plaintiff's requests for counsel. The court will stay these proceedings for sixty days. If counsel cannot be found within that time period, then Brown will be required to proceed *pro se* and the court will issue a case management order establishing deadlines for the close of discovery and the submission of dispositive motions.

**RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Keith Brown ("Plaintiff" or "Brown"), a self-represented individual housed at the Frackville State Correctional Institution ("SCI-Frackville") in Frackville, Pennsylvania, initiated this action on May 1, 2020 in the Court of Common Pleas of Schuylkill County against Dr. Mary-Joy Monsalud, Dr. Andrew Newton, and Corrections Health Care Administrator ("CHCA") Karen Holly. Defendant Monsalud removed the action to this court on May 26, 2020. (Doc. 1.)

In his complaint, Brown describes himself as an individual with a significant history of mental illness with hospitalizations, and limited vision due to glaucoma and a corneal transplant. (Doc. 1-3, ¶ 5.) Based on these ailments, Brown claims to be a qualified individual with a disability under the terms of the American Disabilities Act, 42 U.S.C. § 12131(2). He adds that he has a "very long history of suicide attempts with all his medication." (*Id*., ¶¶ 6, 11, 34.)

Upon Brown's arrival at SCI-Frackville in April 2018, he advised all Defendants of his "special needs" and that he was "not allowed to hold any medication inside his cell" per a Bureau of Health Care Services directive. He cites to a March 23, 2016 Final Appeal Decision resolving Grievance 592113 ("Final Grievance Appeal") as evidence of this mandate. (*Id*., ¶ 10; *see also* Doc. 1-2, p. 10.)[1] In the appeal, the DOC's Bureau of Health Care Services reviewed

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Brown's 2015 concerns that he was not capable "of self-administering [his] glaucoma eye [drops] based on [his] history and risk of self-harm" while housed at a different prison. (*Id*.) Brown was "encouraged to participate in [his] treatment plan to self-administer [his] eye drops under supervision of the medical staff in the medical department" and advised the Defendants that all medication, including his "7 bottle[s] of eye drops and his pills" must be taken "under the supervision of medical staff down in the medical department." (Doc. 1-3, ¶ 11.)

Defendants dispensed his medication in this manner until June 7, 2019, when Brown claims that Defendants forced him to either take his medication to his cell or not receive his medication. (*Id.*, ¶ 13.) Brown claims that due to his refusal to accept his medication on Defendants' terms, he was denied his eye drops for a month. Brown claims to have lost the vision in his right eye due to the lack of the medication. (*Id.*, ¶¶ 14, 17.) He also claims to have "suffered severe physical damages, including but not limited to the risk created by unsafe and unhealthy living conditions and exposure to degrading and in human conditions of confinement resulting in great emotional distress." (*Id.*, ¶ 31.) Plaintiff contends that Defendants' actions "caused the Plaintiff severe emotional distress, anxiety, and fear." (*Id.*, ¶ 41.)

Brown also claimed that Defendants violated Title II of the ADA and the Eighth Amendment when they modified the manner of access to his prescription

ophthalmic drops which placed him at an increased risk of harm due to his known vulnerability to self-harm with prescription medication under his exclusive control. Brown also sets forth a state law claim of intentional infliction of emotional distress ("IIED") due to the extreme and outrageous nature of Defendants' conduct.  (Doc. 1-3.)

On September 30, 2021, the court dismissed Brown's ADA claims against Drs. Monsalud and Newton.  Brown's ADA claims against CHCA Holly were dismissed in her individual, but not official, capacity.  Brown's Eighth Amendment and state claim were permitted to proceed.  (Docs. 80, 81.)  All Defendants have answered the amended complaint.  (Docs. 83-85.)

## DISCUSSION

Brown seeks the appointment of counsel due to his mental health issues, the complexities of the issues involved, and the need for assistance in conducting discovery from the institution's Restricted Housing Unit ("RHU").  (Docs. 70, 86.)

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

4

However, representation by counsel may be appropriate under certain circumstances, after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron*, 6 F.3d at 155. If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the plaintiff's ability to retain counsel on his or her own behalf;
> (5) the extent to which a case is likely to turn on credibility determinations, and;
> (6) whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57. This list of factors is non-exhaustive, and no single factor is determinative. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)). Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases." (*Id.*)

First, the court has found that Brown's Eighth Amendment and state law claims have arguable merit for the reasons set forth in the September 30, 2021 memorandum. *See* Doc. 80. Having made that determination, the court moves

forward to evaluate the remaining *Tabron* factors. An analysis of these factors satisfies the court that appointment of counsel at this time is warranted.

The first *Tabron* factor, Brown's ability to present his own case, is "perhaps the most significant[.]" *Montgomery,* 294 F.3d at 501. In evaluating this first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience … plaintiff's ability to understand English … or, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement." *Tabron*, 6 F.3d at 156. While Brown has demonstrated an ability to represent himself through written submissions, the court does not believe that he has the capacity or ability to properly move this case to resolution. The legal issues involve whether it was reasonable for Defendants, given Brown's medical and mental health issues and history, to deprive him of his eye medication for a month when he refused to keep his eye medications in his cell to self-administer them as directed. This issue is complicated by Brown's mental health history and complex medical issues.

Furthermore, while extensive discovery involving the review of Brown's medical records will be necessary. It is also possible that Brown may need an expert opinion. Whether such an opinion can be obtained is beyond the scope of this analysis, but the court considers it necessary for Brown to have the ability to explore this possibility in order to adequately support his case in anticipation of

summary judgment, and any possible trial.  In this respect, the assistance of counsel is necessary.

As this case is likely to involve credibility determinations with respect to medical treatment decisions, the court is persuaded that Brown cannot handle this aspect of the case.  Counsel is necessary for the cross examination of witnesses, some of whom are medical professionals.  Thus, this factor too weighs in favor of appointing Brown counsel.

The final *Tabron* factor for consideration is Brown's ability to afford counsel.  It is clear from the record that he cannot.  Moreover, based on Brown's motions for counsel, he claims to have sought to obtain counsel in the past by seeking assistance from several individuals and organizations.  His efforts, however, were unsuccessful.

Given the nature of the claims, and the above-cited reasons, the *Tabron* factors favor the conditional appointment of counsel in this case.  Brown is advised that if the Court is unable to appoint counsel in this matter, he will be required to proceed without counsel.

## CONCLUSION

The court finds that the complex medical and mental health issues involved in this case support the conditional appointment of counsel for Brown.  The court will stay these proceedings for sixty days.  If counsel cannot be secured within that

time period, the stay will be lifted and Brown will be required to proceed without counsel. The court will delay issuing a case management order establishing deadlines for the close of discovery and the submission of dispositive motions until it is determined whether counsel can be obtained.

Dated: November 3, 2021

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania